## WILLIAM T. ANDREWS vs. SOPHIA BISHOP & others.

If a testator who has taken a conveyance of land subject to a mortgage does not in his will indicate an intention to charge the mortgage debt upon his personal estate, the land will be treated as the primary fund for the payment thereof.

An unmarried childless testator, of considerable property, for whom a widow and her daughter, whose united property never exceeded $1300, had for many years kept house in Boston, provided for them in his will, by giving the house and land occupied by him and them, and bank shares of the par value of $5600 in trust, to permit the widow to occupy and have the use and benefit of the house during her life, she paying the taxes, and "to hold and manage the whole of the said property as a trust fund, subject to her right to occupy the house," and to "collect and pay over to her the net income thereof semi-annually during her life, and, upon her decease, to convey and deliver the said real and personal estate and trust fund to the daughter, discharged of all trusts;" and by directing his executor to pay a sum for which the bank shares were pledged. The house and land were subject to a mortgage for $5600, which existed at the time of his purchase of the premises, and formed a part of the consideration thereof. *Held*, that the mortgage debt should be charged upon his personal estate.

BILL IN EQUITY, in the nature of a bill of interpleader, filed by the executor of the will of Thomas Wetmore, to obtain the

instructions of the court as to the payment of a mortgage upon an estate devised to him in trust. The material portions of the will were as follows :

" *Second.* I give to Mrs. Sophia Bishop, of Boston aforesaid, who has for so long resided in my house and faithfully cared for me, all my apparel, my household furniture, bed and table linen ; the same being in the house I own and occupy in Dwight Street, in said Boston.

" *Third.* I give to William T. Andrews, Esquire, aforesaid, my house and land in Dwight Street, in the said Boston, which I now occupy ; and also my shares of the capital stock of the Globe Bank in Boston, valued, at their par value, at fifty-six hundred dollars ; to hold and manage the same in trust :

" First, To permit the said Sophia Bishop to occupy and have the use and benefit of the said house in Dwight Street during her natural life, she paying the taxes thereon assessed while she shall so occupy the same; and,

" Secondly, To hold and manage the whole of the said property as a trust fund, subject to her right to occupy the house as aforesaid, if she shall wish to do so ; and to collect and to pay over to her, on her receipt therefor, the net income thereof semi-annually during her natural life ; and,

" Thirdly, Upon her decease, to convey and deliver the said real and personal estate and trust fund to Jane Gove Bishop, daughter of the said Sophia Bishop, free and discharged from all trusts ; to have and to hold the same to her and her heirs and assigns forever.

" *Fourth.* My bank stock aforesaid being under pledge and security for the payment of four thousand dollars, or thereabouts, I direct my executor to pay the whole sum for which it is pledged, as soon as it can conveniently be done, so that the said bank stock may be free from incumbrance; such payment to be made out of property not specifically herein devised."

The residue of the estate was given to the nephews and nieces of the testator.

The parties agreed upon the following facts, so far as the same might be competent and material : The testator died in

March 1860, unmarried and without issue, possessed of real and personal property amounting in all, after payment of debts, to about $60,000. He purchased the house in Dwight Street in May 1857, for $8500. It was then subject to a mortgage for $5600 and interest, which formed part of the consideration of the purchase ; and he subsequently paid the interest thereon. Mrs. Bishop kept his house from 1837 until his death, and took care of him and his rooms and clothing, and boarded him, receiving for all these services from twenty-five to forty-two dollars a month. He knew that the united property of Mrs. Bishop and her daughter had at no time exceeded $1300. The house in Dwight Street was purchased and fitted up in accordance with their choice and recommendation, and they lived in it as a home.

Upon these facts, the case was reserved for the determination of the whole court.

*H. Gray, Jr.,* for Mrs. Bishop and Miss Bishop. Even if the testator had died intestate, the mortgage, having formed part of the consideration of the purchase, should be charged on his personal estate, to the exoneration of the land. *Seaver* v. *Lewis,* 14 Mass. 87. *Hewes* v. *Dehon,* 3 Gray, 206. 1 Story on Eq. § 576. 2 Jarman on Wills, 558, 561–564. *Parsons* v. *Freeman,* Ambl. 115 ; S. C. 2 P. W. 664, *n.* *Rochfort* v. *Belvidere,* Wallis & Lyne, 49, 50 ; S. C. 5 Bro. P. C. (2d ed.) 299, 311. *Billinghurst* v. *Walker,* 2 Bro. C. C. 608. *Oxford* v. *Rodney,* 14 Ves. 424. 1 Sugd. Vend. (9th ed.) 188. 1 White & Tudor's Lead. Cas. in Eq. 533. *Hoff's Appeal,* 24 Penn. State R. 205. *Thompson* v. *Thompson,* 4 Ohio State R. 350. Such was the intent of the testator, on the face of the will. *Cumberland* v. *Codrington,* 3 Johns. Ch. 272. *Hewes* v. *Dehon,* and *Thompson* v. *Thompson, ubi supra.* *Williams* v. *Bradley,* 3 Allen, 280. This construction is fortified by the facts agreed, which are competent for the purpose of placing the court in the situation of the testator. *Williams* v. *Bradley,* 3 Allen, 280. *Tucker* v. *Seamen's Aid Society,* 7 Met. 205.

*I. F. Redfield,* for the residuary devisees. The will itself contains no direction and indicates no intention that the mortgage shall be paid by the executor. There must be in the will a

plain intention, or a necessary implication. 2 Jarman on Wills, 553, 559. 2 Williams on Executors, (4th Amer. ed.) 1547 4 Kent. Com. (6th ed.) 421. *Hewes* v. *Dehon*, 3 Gray, 207. *Cumberland* v. *Codrington*, 3 Johns. Ch. 272. *Bootle* v. *Blundell*, 1 Meriv. 219. *Ancaster* v. *Mayer*, 1 Bro. C. C. 460. *Woolstencroft* v. *Woolstencroft*, 6 Jur. (N. S.) 1170. *Lawson* v. *Hudson*, 1 Bro. C. C. 58. In this case, there is a strong expression of intention to be gathered from the face of the will that the estate should be taken subject to the mortgage. The setting apart of just enough bank stock, at its par value, to meet the mortgage, and the express direction that the incumbrance on the stock shall be paid, while no direction is given to pay the incumbrance on the land, are very decisive. This was not the debt of the testator originally, and had never become his, in any such sense as to rest as a charge upon his personal estate. *Ancaster* v. *Mayer*, 1 Bro. C. C. 454; S. C. 1 White & Tudor's Lead. Cas. in Eq. 505, and English and American notes, where the authorities are collected. *Howel* v. *Price*, 1 P. W. 290, *n.* *Palmer* v. *Hendrie*, 28 Beav. 341. *Gould* v. *Winthrop*, 5 R. I. 319.

BIGELOW, C. J. Where a mortgage debt is not the personal debt of a testator, but of a previous owner of the estate by whom it was conveyed to the testator subject to the mortgage, such debt constitutes a primary charge on the land. But the burden of it will not be placed on the land, where the continuance of such charge would be repugnant to some of the provisions of the will or operate to defeat them. Whenever it appears to have been the intention of the testator that a devise · of real estate, which is subject to a mortgage made by a third person, shall take effect so that the devisee shall receive and hold the same discharged of such mortgage, equity will require that the property of the testator shall be so marshalled as to carry such intention into effect, and the mortgage debt in such case will be held to form a proper charge upon the personalty. *Cumberland* v. *Codrington*, 3 Johns. Ch. 229, 257, 272. *Rogers* v. *Rogers*, 1 Paige, 188. *Hewes* v. *Dehon*, 3 Gray, 206, 208.

It seems to us that this case comes within the principle last stated, and that the continuance of the charge of the mortgage

on the house and land devised in trust for the benefit of Mrs. Bishop and her daughter would tend essentially to impair if not entirely to defeat the trust declared in respect thereof in the third clause in the will. If a different construction of the will should prevail, and the mortgage be held to be a charge on the real estate, the *cestuis que trust* would not receive the benefit or enjoy the *quantum* of estate which the testator manifestly intended to give them. Mrs. Bishop could not occupy the house or have the use and benefit of it during her natural life, on payment of the taxes only; she would be obliged to pay in addition a large sum annually for interest on the mortgage debt, until the principal should become due; the whole of the property — the bank stock and the house — could not be held and managed as a trust fund for her benefit; if she continued to occupy the house, there would be no net income to pay over to her; if she paid the principal of the mortgage debt, when it fell due, it would absorb nearly all the personal estate, which was given in trust for her benefit; if the debt was so paid out of the trust fund, it would be impossible to convey and deliver " said real and personal estate " to her daughter on the decease of the mother, and a like result would follow, if the mortgage was not paid and a foreclosure of it should take place. Such results would defeat the intent of the testator, which was to give to the *cestuis que trust* the beneficial use of the entire property devised in trust for their benefit.

This conclusion is fortified by the evidence, which shows that these objects of his bounty had for a long time constituted members of his household, and that he would naturally desire to continue to them the comfort of a home after his decease. These facts may be considered for the purpose of placing those who have occasion to interpret the will in the situation of the testator.

Great stress is placed by the learned counsel for the residuary legatees on the fact, that an express provision is made by the will for the payment of a debt for which the bank stock devised in trust was pledged by the testator in his lifetime, and that no similar provision is inserted for the payment of the mortgage on

the house. But the cases are very different. The bank stock being pledged as collateral did not stand in the name of the testator, and would not be in his possession at the time of his death. It was, therefore, a matter of wise precaution to insert a special direction to his executor concerning its redemption. No such direction was needful concerning the real estate, the title to which stood in the name of the testator. Besides; if he had intended that bank stock should be used to pay off the mortgage debt, it is reasonable to suppose that he would give such direction, when he was making provision concerning the redemption of it from the pledge to which it was subject.